DE KOVEN DRUG COMPANY, Plaintiff-Appellant and Cross-Appellee, v. FIRST NATIONAL BANK OF EVERGREEN PARK et al., Defendants.— (GREAT ATLANTIC & PACIFIC TEA COMPANY, INC., Defendant-Appellee and Cross-Appellant.)

(No. 60154;

First District (5th Division)—April 11, 1975.

King and Braude, of Chicago (Warren E. King, of counsel), for appellant.

Arvey, Hodes, Costello, & Burman, of Chicago (Jack H. Oppenheim and David L. Passman, of counsel), for appellee.

Mr. JUSTICE SULLIVAN delivered the opinion of the court:

In this appeal, plaintiff complains that a judgment against defendant,

The Great Atlantic & Pacific Tea Company, Inc. (A&P), for damages in the amount of $5,000 was inadequate. A&P cross-appeals, asserting that plaintiff did not prove it was damaged in any amount and that the award of damages was excessive and arbitrarily reached by the trial court.

The record discloses that both plaintiff and A&P leased stores from defendant, The First National Bank of Evergreen Park (Bank) in the Midlothian Shopping Center (Center). Plaintiff's lease contained a clause giving it the exclusive right to sell liquor in its drug store at the Center. However, A&P sold liquor at its Center store for a 13-month period ending May 31, 1972. When A&P began its liquor sales, plaintiff sued to enjoin their sale and for damages by reason thereof. The injunction was issued and, after hearings, the judgment for damages was entered. No appeal has been taken from the issuance of the injunction.

It is the contention of plaintiff that it proved damages in the amount of $27,406. It reaches this figure from its testimony that during the 13-month period it suffered a $13,711 loss in gross profit on actual sales of liquor and a $14,423 diminution of gross profit on lost sales of liquor. From this total of $28,134 it deducted $728 because of its testimony that the projected sales upon which these figures were based woud have increased the rental expense 2½% and the dram shop insurance 0.9.% This deduction resulted in the balance of $27,406.

Plaintiff claims a loss in gross profit on actual sales of liquor, arguing that its gross profit from liquor sales was reduced 2.67% for the year ending May 31, 1971 in relation to the year ending May 31, 1972, and that this decrease resulted from the fact that plaintiff was required to lower its liquor prices to meet the A&P competition. Its actual sales during the 13-month period ending May 31, 1972, were $513,530 and, applying the 2.67% reduction factor, it accounts for the claimed loss of $13,711.

In support of its claim of loss of gross profit of $14,423 because of lost sales, plaintiff argues (1) that in the past when there was an increase in sales of other goods sold at its store, where was a corresponding increase in the liquor sales; (2) that its sales of other goods increased 16% during the 13 month period that A&P was selling liquor, while its liquor sales dropped 3.95%; [1] and (3) that its gross profit on liquor sales for the year ending May 31, 1971, was 13.86% which, applied to the estimated decrease in sales of $104,064 for the year ending May 31, 1972, accounts for its claimed loss of $14,423 in gross profit because of lost sales.

In response to these contentions and in support of its cross-appeal,

---

[1] Applying the 16% figure to its actual liquor sales of $513,530 during the 13-month period, plaintiff projects sales of $617,594, a difference of $104,064.

A&P maintains there was no proof that plaintiff suffered any damage. A&P first points out that the judgment order states the damages claimed "are of a highly speculative nature" and the computations submitted by plaintiff are "extremely complex and speculative"; thus, it argues that in awarding damages of $5,000 to plaintiff, the trial court acted arbitrarily, and the judgment should be vacated.

Furthermore, A&P argues that plaintiff's records established that during the 4-month period in 1972 after A&P ceased selling liquor, plaintiff's sales increased $20,165, but it suffered a $1,541 loss of gross profit. It argues that this is contrary to the contention of plaintiff that its gross profit during the 13-month period would have been greater, because there would have been more sales and higher prices had it not been in competition with A&P.

In addition, A&P asserts (1) the testimony shows that the dollar increase in plaintiff's liquor sales in fiscal 1970 over 1969 was $86,159 and in 1971 over 1970 only $45,439, indicating a downward trend at the time A&P began selling liquor; (2) any increase in liquor sales would necessarily involve an increase in plaintiff's expenses, so that its damages should properly be measured by loss of net profit rather than gross profit; (3) plaintiff's percentage of net profit on sales of all of its goods in prior years ranged from ½ of 1% to 3% and, applying those percentages to plaintiff's testimony of a loss of liquor sales of $104,064 during the A&P competition, its net profit would have ranged between $520 and $3,120.

In reply thereto, plaintiff points out that the evidence shows it did not use net profit as the measure of its damages, because it made no determination at any time in the past of net profit for its liquor department and, more significantly, it contends that so far as the projected increase in sales was concerned, its net profit would have been the same as its gross profit, because its expenses would not have increased except for the rent and dram shop insurance factors. In any event, it contends that where the fact of damage has been established, it can prove the extent of its damage in terms of its gross profits even though the result was only approximate. In relies upon *Story Parchment Company v. Paterson Parchment Paper Company*, 282 U.S. 555, 75 L.Ed. 544, 51 S.Ct. 248, in which the court stated the rule in cases where there is no question as to the fact of damage at page 563, 564:

> "[I]t will be enough if the evidence show the extent of the damages as a matter of just and reasonable inference, although the result be only approximate.
>
> *    *    *
>
> 'And when, from the nature of the case, the amount of the damages can not be estimated with certainty, or only a part of them can be so estimated, we can see no objection to placing before the

jury all the facts and circumstances of the case, having any tendency to show damages, or their probable amount; so as to enable them to make the most intelligible and probable estimate which the nature of the case will permit.' "

■■ It is the general rule that damages may not be predicated on mere speculation, hypothesis, conjecture or whim. (*Looby v. Buck*, 20 Ill.App.2d 156, 155 N.E.2d 641.) However, once the existence of damage is established, evidence tending to reasonably approximate the extent of the damage is admissible. (22 Am.Jur.2d *Damages* § 177 (1965).) Absolute certainty as to the amount of damage in such cases is not required to justify a recovery. It is only necessary that the evidence tend to establish a basis for the assessment of damages with a fair degree of probability. *Barnett v. Caldwell Furniture Company*, 277 Ill. 286, 115 N.E. 389. See also *Meyer v. Buckman*, 7 Ill.App.2d 385, 129 N.E.2d 603.

■■ We are of the belief that as a result of the sale of liquor by A&P in the Center, the plaintiff did in fact suffer damage. In view thereof, plaintiff could establish the extent of its damage as a matter of reasonable inference even though the result could only be approximate. *Story; Barnett.*

■■ The rule that the finding of a trial court sitting without a jury will not be disturbed unless manifestly erroneous is applicable to an assessment of damages. (*Schatz v. Abbott Laboratories, Inc.*, 51 Ill.2d 143, 281 N.E.2d 323.) It is in this light that we have reviewed the evidence, which indicates that plaintiff was required to reduce its liquor prices because of A&P's competition and, in support of its contention that it suffered a loss of gross profit in actual sales, plaintiff produced testimony of the sales of liquor during the A&P sales period and applied to it the percentage loss of 2.67%, which was the difference between its gross profit on liquor for the years ending May 31, 1971 and May 31, 1972. From this computation, it reached its claimed gross profit loss on actual sales of $13,711.

The weakness in this argument is apparent because plaintiff produced no evidence of the actual price reductions; indeed, made no showing of the prices of any liquor items before, during or after the A&P's selling period. It relies solely on the difference in its gross profit in the prior 2 years to account for its claimed loss on actual sales. Because of all the factors that could influence gross profit on a year-to-year basis, we cannot, as apparently the trial judge did not, accept the full amount of plaintiff's claimed profit loss on actual sales as a reasonable basis of its damages.

Plaintiff supports its other contention of a gross profit loss in lost sales, or sales that it did not make because of A&P's competition, by testimony of a correlation in the 2 prior years between sales of other goods in its

store and the sales of liquor. This correlation indicated that an increase in the sales of other goods brought a corresponding increase in the sales of liquor. Further testimony disclosed that during the A&P selling period, plaintiff's sales of other goods increased 16%; whereas, its sales of liquor decreased. It reasons from this testimony that the decrease in the sales of liquor was due to the A&P competition. Using the 16% factor, it computed that the lost sales amounted to $104,064 and, because its gross profit on liquor for the year ending May 31, 1971, was 13.86%, it computes its profit loss at $14,423.

Again, the weakness of this argument is apparent (1) from the testimony of plaintiff's accountant that the factors influencing liquor sales are not necessarily the same with respect to the sale of other goods; (2) because it assumes that liquor sales were in an uptrend; whereas, the record discloses there was a substantial drop in the dollar increase of liquor sales during the fiscal years of 1969 through 1971; (3) because it assumes that if the projected sales of $104,000 had been made, there would have been a profit; whereas, the record discloses that increased sales do not necessarily produce a profit, as previously indicated from the 4-month period after A&P ceased selling (June through September, 1972), in which plaintiff's liquor sales increased more than $20,000 over the same 4-month period in 1971; whereas, there was a decrease in gross profit of over $1,500 in these same 4-month periods.

■■ The trial court, confronted with the conflicting estimates of damages ranging from plaintiff's claim of a loss of gross profit of over $27,000 down to A&P's contention that plaintiff suffered no actual damage, or at most a net profit loss of $3,120, determined that damages in the amount of $5,000 would be reasonable. From our detailed examination of the record, and considering the nature of the proof of damage as set forth above, we are unable to say that this award of damages was manifestly erroneous.

■■ Plaintiff's remaining contention is that the trial court erred in denying an offer of proof as to the correlation between liquor sales and the sales of other goods in three other stores owned by it in the general area of the Center. The records of these stores for the year ending September 30, 1972, as compared to the prior year indicated a high degree of correlation between increases in liquor sales and increases in the sales of all other goods, as follows: In Store "A," a correlation of 68.6%; in Store "B," 91.3%; and in Store "C," 96.7%. It is the contention of plaintiff that this high degree of correlation in its other stores strengthens the inference that liquor sales at its Center store would have increased 16% during the A&P competition because its sales of other goods increased 16% at that store.

This evidence has little, if any, probative value in view of the disparity

factors involved in the sales at the different locations. In addition, because the offered testimony provides no information as to net or gross profit, we believe it to be extraneous to the issue here, which concerns the damages occasioned to plaintiff because of the A&P competition with its Center store. In any event, we see no prejudicial error in its refusal.

For the reasons stated, the judgment is affirmed.

Affirmed.

DRUCKER and LORENZ, JJ., concur.